**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-01709-MSK

**ELIZABETH H. GRAFFIS,**

    Plaintiff,

v.

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

    Defendant.[1]

---

**OPINION and ORDER**

---

**THIS MATTER** comes before the Court on Plaintiff Elizabeth H. Graffis' appeal of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.     Jurisdiction**

Ms. Graffis filed a claim for disability insurance benefits pursuant to Title II. She asserted that her disability began on April 15, 2007. After her claims were initially denied, Ms. Graffis filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held on July 1, 2010.

---

[1] At the time Ms. Graffis filed her appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commisioner of Social Security, effective February 14, 2013.

After the hearing, the ALJ issued a decision with the following findings: (1) Ms. Graffis met the insured status requirements of the Social Security Act through December 31, 2012; (2) she had not engaged in substantial gainful activity since April 15, 2007; (3) she had the following severe impairments: atrial fibrillation, degenerative disk disease, arthritis, asthma, and obesity; (4) none of these impairments, considered individually or together, met or were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"); (5) Ms. Graffis had the Residual Functional Capacity ("RFC") to perform light work as defined in 29 C.F.R. § 404.1567(b)[2] with the following additional limitations: lifting limited to ten pounds frequently and twenty pounds occasionally; occasional stooping, kneeling, crouching, climbing, or crawling; and no work that requires exposure to hazardous machinery, unprotected heights, or extreme cold, dust, or fumes; (6) Ms. Graffis was not disabled because she was able to perform her past relevant work as both a fast food manager and retail manager; and (7) Ms. Graffis was also able to perform other jobs in the national economy, including office helper, general clerk, parking lot attendant, and receptionist.

The Appeals Council denied Ms. Graffis' request for review of the ALJ's decision. Consequently, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Mr. Graffis' appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

**II.   Material Facts**

Having reviewed the record in light of the issues raised, the material facts are as follows.

---

[2] All references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition. Subsequent citations to 20 C.F.R. Part 404 will include only the specific section, e.g. § 404.1567.

Ms. Graffis' primary care provider was Ms. Mendoza-Werner, a physician's assistant who practiced under the direction and supervision of, and in consultation with, a physician, Dr. Perry. According to the record, Ms. Mendoza-Werner treated Ms. Graffis intermittently from December 2007 to January 2010, consulting with Dr. Perry about Ms. Graffis' conditions and treatment. The medical issue most consistently addressed was Ms. Graffis' atrial fibrillation, a heart rhythm disorder, for which she was prescribed Coumadin, an anti-coagulation drug. From March to July 2008, Dr. Perry reviewed several records and examination results pertaining to Ms. Graffis' atrial fibrillation and thyroid conditions, including a Molecular Genetic Assessment, a sonographic evaluation of Ms. Graffis' thyroid gland, and the results of an electrocardiogram ("EKG"). Based on this information and discussion with Ms. Mendoza-Werner, Dr. Perry adjusted Ms. Graffis medication twice in July 2008.

Ms. Graffis presented two RFC assessments. The first, dated January 22, 2009, was co-signed by Ms.Mendoza-Werner and Dr. Perry. It stated that Ms. Graffis' physical limitations began 2-3 years before the date of the report, and that she was limited to: lifting and carrying ten pounds at a time for no more than one-third of an eight hour workday; sitting for no more than one hour at a time and no more than three to four hours in an eight hour workday; standing or walking no more than thirty minutes at a time and no more than three hours in an eight hour workday; seldom stooping and squatting; rarely crawling and kneeling; and occasionally reaching with the both hands. A second RFC, signed by Ms. Mendoza-Werner only, is not relevant to the particular disputes on appeal.

In conjunction with her treatment by Dr. Perry and Ms. Mendoza-Werner, Ms. Graffis was referred to Dr. Lochow for assessment of her atrial fibrillation. During a May 2008 examination, Ms. Graffis provided Dr. Lochow with a brief medical history. Dr. Lochow noted

in his records that Ms. Graffis ran a bed and breakfast and described herself as "being pretty active, participating in activities of daily living and yard work." She reported some shortness of breath and daily palpitations, but no chest pain. Dr. Lochow performed an EKG, which showed atrial fibrillation. He prescribed Coumadin as an anti-coagulant and Toprol for heart rate control, but also indicated that he would request Ms. Graffis' medical records and recommended more testing.

The record contains no other written RFC assessments. However, there are opinions expressed by non-examining consultants who reviewed Ms. Graffis' medical records. Pertinent to the issues raised on appeal, Dr. Hicks, a physician, reviewed Ms. Graffis' records and testified remotely at the hearing before the ALJ. In response to several questions posed by both the ALJ and Ms. Graffis' attorney, Dr. Hicks opined that based on her medical records, Ms. Graffis' could perform light activity with the following restrictions: no standing or walking for more than one hour at a time; no exposure to dust or hazardous activity; and lifting no more than twenty pounds occasionally and ten pounds frequently.

In addition to Dr. Hicks, a vocational expert also testified at the hearing. Ms. Graffis' attorney asked this expert the following hypothetical question: whether a person with Ms. Graffis' age, education, and work experience would be able to work if they were limited to lifting only ten pounds occasionally, sitting for three to four hours in a day, standing and walking for three to four hours out of a day, alternating sitting, standing, and walking in thirty to sixty minute increments, and seldom stooping and squatting. The vocational expert responded that Ms. Graffis would be unable to perform her past work, but would still be able to work as a parking lot attendant, general clerk, and receptionist.

### III.  Issues Presented

Ms. Graffis raises three challenges to the Commissioner's decision: (1) the ALJ failed to weigh Dr. Perry's treating opinion; (2) the ALJ failed to properly assess Ms. Mendoza-Werner's opinion; (3) the ALJ improperly relied on a lack of an opinion from Dr. Lochow. Because these issues only pertain to Step 4 and 5 of the disability review process, the Court does not address Steps 1-3.

### IV.  Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 f.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

"Medical opinions are statements from physicians and psychologists…that reflect judgments about the nature and severity of [a claimant's] impairment(s)…." § 404.1527(a)(2). The ALJ must evaluate every medical opinion in the record, whether from a treating, examining, or consulting physician or psychologist. § 404.1527(c).

A treating physician's opinion is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the] case record." § 404.1527(c)(2). An ALJ must give specific and legitimate reasons to reject a treating physician's opinion or give it less than controlling weight. *Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001). Even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using the following factors:

> 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (citation omitted); § 404.1527(c). Having considered these factors, an ALJ must give good reasons for the weight assigned to a treating source's opinion. § 404.1517(c)(2). These reasons must be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight. *Watkins*, 350 F.3d at 1301.

While medical opinions must come from certain medical sources, like physicians or psychologists, other medical sources, including physician's assistants, may also offer opinions. SSR 06-03p; *Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007). These opinions may reflect "the source's judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources,' including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id*. The opinion of a medical source who is not a physician or psychologist is evaluated using the following: (1) the frequency and length of the treatment relationship; (2) the consistency of the opinion with the record; (3) the degree to which the source presents relevant evidence to support an opinion; (4)

the sources qualifications or specialty training; and (5) any other factors that tend to support or refute the opinion. *Id.* Not every factor applies in every case. *Id.*; *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citations omitted). An ALJ should explain the weight given to opinions from non-acceptable sources in order to allow subsequent reviewers to follow the ALJ's reasoning, particularly when the opinion might have an effect on the outcome of the case. *Id.*

Finally, in the administrative review process, harmless error is applied with caution. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Harmless error may be appropriate where, based on material the ALJ considered, the court can confidently say that no reasonable administrative fact finder, following the correct analysis, could have resolved the factual matter in any other way. *Id.*

## V.  Discussion

Dr. Perry and Ms. Mendoza-Werner rendered both diagnostic opinions (as reflected in the treatment records) and RFC opinions. There appears to be no dispute as to the diagnostic opinions. Indeed, the ALJ based the Step 2 determination of severe impairments on these. Instead, the dispute in this appeal focuses on the manner in which the ALJ addressed the RFC opinions by Dr. Perry and Ms. Mendoza-Werner and an inference drawn from Dr. Lochow's diagnosis and treatment records.

### A.  RFC Opinions by Dr. Perry and Ms. Mendoza-Werner

There is no dispute that Dr. Perry and Ms. Mendoza-Werner treated Ms. Graffis between 2007 and 2010. They expressed opinions as to her RFC in two forms dated January 22, 2009, and April 10, 2010. The first form (Exhibit 12F) was signed by both Dr. Perry and Ms. Mendoza-Werner; the second only by Ms. Mendoza-Werner.

The ALJ gave no consideration to either RFC opinion, based on the qualifications of the medical providers.  As to Dr. Perry, she doubted his knowledge and treatment of Ms. Graffis.  The ALJ rejected his RFC opinion stating "… there is no evidence in the medical record that Dr. Perry ever evaluated – or met – the claimant."  As to Ms. Mendoza-Werner's RFC opinions, the ALJ gave them "scant weight" due to a lack of support in the record and because Ms. Mendoza-Werner was not a doctor with an area of specialty.

Ms. Graffis argues that the ALJ did not properly evaluate Dr. Perry's opinion or Ms. Mendoza's opinion as to her RFC.  This Court agrees.  The ALJ's decision does not accord presumptive controlling weight to Dr. Perry's opinion pursuant to § 404.1527(c)(2), nor does the ALJ state specific reasons why either opinion is given particular weight.  There is no discussion of the factors found in § 404.1527(c) in considering either professional's opinions. [3]  Neither the record nor the decision shows any request by the ALJ for clarification or supplementation[4] of the

---

[3] This provision applies both to treating physicians and to other medical providers.  SSR 06-03p; *Frantz*, 509 F.3d at 1302.  The record shows that Ms. Mendoza-Werner was a trained and certified physician's assistant who worked under the direct supervision of Dr. Perry.  Pursuant to SSR 06-03p, a medical professional who is not a physician or psychologist can offer opinions about a patient's functional limitations.  Those opinions must be considered and weighed using the same factors used with regard to opinions of treating physicians.  *Id*.

[4] At the time the ALJ issued the decision, § 404.1512(e) required an ALJ to seek additional evidence or clarification from a medical source when faced with a conflict or ambiguity that required resolution.  *See Kilpatrick v. Astrue*, 502 Fed.Appx. 801, 805 (10th Cir. 2012) (Not selected for publication in the Federal Reporter).  The Court notes that § 404.1512 was changed in 2012, eliminating that explicit requirement.  According to the Commissioner, this rule was changed to give ALJ's more "flexibility in determining how best to obtain information."  How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10651-01 (Feb. 23, 2012) (to be codified at 20 C.F.R. § 404.1512).  Although the Commissioner eliminated the specific rule, he indicated that "there are times when we would still expect adjudicators to re-contact a person's medical source first; that is, when re-contact is the most effective and efficient way to obtain the information needed to resolve an inconsistency or insufficiency in the evidence received from that source."  *Id*.

roles of Dr. Perry and Ms. Mendoza-Werner in treating Ms. Graffis[5] or any areas that the ALJ considered vague.

By rejecting the RFC opinion because Dr. Perry did not directly treat Ms. Graffis[6] and because Ms. Mendoza-Werner was not a doctor qualified to render such an opinion, the ALJ essentially excluded consideration of all RFC opinions by Ms. Graffis' medical providers. This error was not harmless. Facially, it appears that Ms. Graffis was deprived of substantive review of the RFC opinions rendered by her treating professionals in accordance with applicable law. That by itself justifies reversal and remand.

However, it also appears that the ALJ did not reject all of Dr. Perry's and Ms. Mendoza-Werner's opinions despite their purported professional limitations. For example, the ALJ relied on Dr. Perry's and Ms. Mendoza-Werner's diagnoses in finding that Ms. Graffis had severe impairments at Step 2.

In addition, the ALJ adopted an RFC premised upon Dr. Perry's and Ms. Mendoza-Werner's assessments. The ALJ purportedly adopted the RFC assessment made by Dr. Hicks, a non-examining consultant, in preference to Dr. Perry's and Ms. Mendoza-Werner's RFC assessment. However, Dr. Hicks' opinion was based on the RFC assessment by Ms. Mendoza-Werner. Dr. Hicks gave his RFC opinion orally in response to the ALJ's question:

---

[5] However, the record contains several notations indicating that Dr. Perry reviewed Ms. Graffis' medical records, inquired as to her treatment, and adjusted her treatment based on this information. For example, from March 2008 to July 2008, Dr. Perry reviewed a Molecular Genetic Assessment, a sonographic evaluation of Ms. Graffis' thyroid gland, and the results of an EKG. Additionally, Dr. Perry discussed Ms. Graffis' atrial fibrillation with Ms. Mendoza-Werner, adjusting her medication based on this discussion and other information.

[6] The Commissioner argued in its brief that Dr. Perry's opinion was internally inconsistent, was not supported by treatment notes, and was inconsistent with other evidence in the record. The Court declines to consider such *post hoc* arguments. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004).

> So did you agree with the RFC prepared by [Ms. Mendoza-Werner]? You indicated that you didn't see the basis for any of those restrictions and I had kind of the same problem too. I couldn't find a medical diagnosis to support it. Would you feel that…was an appropriate RFC or what would you feel would be the limitations you would expect someone with this medical picture to have?

Dr. Hicks responded: "I'd say… she could do light activities. I'd say because of her obesity she would have difficulty with prolonged standing and walking. That's just because of her weight. But from a heart standpoint there's no really restrictions." He noted that Ms. Graffis should not stand or walk "more than an hour or so at one time." He also testified that "she should probably avoid…exposure to concentrated dust because of the history of asthma although I don't have any real basis for that. And I prefer to keep people on Coumadin away from hazardous machinery because of the chance of getting injured and bleeding." Finally, Dr. Hicks limited Ms. Graffis to lifting twenty pounds occasionally and ten pounds frequently.

The ALJ adopted some of these restrictions in her RFC finding, but also imposed limits on stooping, kneeling, crouching, climbing, or crawling. The only medical professionals who opined that Ms. Graffis had limits on these postural activities were Dr. Perry and Ms. Mendoza-Werner. Thus, both through Dr. Hicks and her own addition, the ALJ incorporated portions of the RFC assessments made by Dr. Perry and Ms. Mendoza-Werner. The ALJ's decision fails to explain why these portions of Dr. Perry and Ms. Mendoza-Werner's opinions were included. This lack of explication similarly requires reversal and remand.

### B. The examination notes of Dr. Lochow

The final issue in this case relates to an inference that the ALJ drew from Dr. Lochow's medical notes. The ALJ assigned "great weight to the fact that Dr. Lochow expressed no opinion with regard to [Ms. Graffis'] ability to perform work activity." Apparently, the ALJ drew an inference from the absence of a RFC assessment by Dr. Lochow; that he found no physical

limitations arising from Ms. Graffis' heart condition. Ms. Graffis argues that this inference was impermissible speculation. The Court agrees.

Dr. Lochow conducted a single examination of Ms. Graffis with regard to Dr. Perry's diagnosis of atrial fibrillation. During the May 2008 examination, Dr. Lochow took Ms. Graffis' medical history and performed several medical tests, including an EKG. Notes from this examination indicate that Ms. Graffis described herself as "pretty active, participating in activities of daily living and yard work." Additionally, Ms. Graffis reported that she ran a bed and breakfast. Dr. Lochow concluded that Ms. Graffis had an atrial fibrillation and prescribed two medications, but made no conclusions regarding any physical limitations. Dr. Lochow did recommend further testing and evaluation and requested "[Ms. Graffis'] recent lab work, clinic notes, and any radiological studies."

Although an ALJ may make reasonable inferences and conclusions when assessing the evidence in the record, the ALJ should not engage in speculation, particularly when assessing medical opinions. *See McGoffin v. Barnhart*, 288 F.3d 1248 (10th Cir. 2002). In this case, the ALJ treated the absence of a medical opinion as, effectively, a medical opinion. Essentially, the ALJ speculated that because Dr. Lochow did not impose physical restrictions, he did not believe that any were appropriate. The record is devoid of any explanation for the absence of physical restrictions in Dr. Lochow's report. Perhaps he was reserving ultimate judgment on Ms. Graffis' prognosis and treatment until after further testing was performed and medical records were reviewed. Perhaps he intended to consult with Ms. Graffis' primary care physician. Perhaps he simply did not want to discourage Ms. Graffis' physical activity in any way. There is no way of knowing what Dr. Lochow's thinking was, thus the significance accorded to Dr. Lochow's records was impermissible speculation.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED** and **REMANDED**.  The Clerk shall enter a Judgment in accordance herewith.

DATED this 18th day of July, 2013

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge